The Honorable Tim Hutchinson State Representative Box 933 Bentonville, Arkansas 72712
Dear Representative Hutchinson:
This is in response to your request for an opinion concerning the Northwest Arkansas Regional Airport Authority. You have asked two questions in connection with the "Northwest Arkansas Regional Airport Authority Agreement" which you have attached to your request. Specifically, your questions are as follows:
 1. Should the authority at any time issue revenue bonds for the development and construction of an airport facility, and after the issuance of said bonds, a legal challenge were to halt development of the airport facility, with whom would the responsibility for paying off the bond issue lie?
 2. In the event that the signatories of the supplemental agreement are found to be liable for the repayment of bonds in the above instance, how will the share of liability of each signatory be determined?
Some explanation is necessary. The cities of Bentonville, Fayetteville, Siloam Springs, and Springdale, and the counties of Benton and Washington, have drafted the "Northwest Arkansas Regional Airport Authority Agreement" (referred to herein as "the agreement").
The agreement is an Interlocal Cooperation Agreement (see A.C.A.25-20-101 et seq.) and a formal compact under A.C.A. 14-165-201 et seq. It authorizes the Authority Board of Directors to construct and operate a regional airport. It also authorizes the Authority to issue revenue bonds. It is clear, however, that the agreement contemplates that the counties and municipalities signing the agreement may contribute to the Authority funds derived from general obligation bonds in addition to cooperating to supply funds by the issuance of revenue bonds. See Article IX. This is the primary reason the project is to be accomplished by an interlocal agreement and a formal compact rather than just by creating a Regional Airport Authority solely under A.C.A.14-362-101 et seq. Regional Airport Authorities created solely under that subchapter are limited to the issuance of revenue bonds.
The agreement provides, however, as regards financing of the project, that:
 The final plan for financing and construction of the new improvements contemplated by this agreement shall be in the form of a supplemental agreement which shall be presented to the parties signatory hereto for approval and when the same shall have been approved by all parties hereto shall become an addendum to this agreement.
See the Agreement, Article VI, paragraph 2.
It is our understanding that this "supplemental agreement" has not yet been finally drafted or executed. Details of the project financing are thus still to be determined. We can therefore only answer your questions in the abstract, with reference to the general laws relevant to your questions. In any event, this office is neither empowered nor equipped to construe specific provisions of agreements with a view toward determining their factual applicability.
With this in mind, we will now undertake to answer your first question which inquires as to who would be responsible on revenue bonds should a legal challenge halt development of the airport.
The answer to this question will depend in large part upon the terms of the bond issue. If the bonds are truly "revenue" bonds, as you seem to hypothesize, the security for the bonds should be stated in the issue and the indenture. See A.C.A. 14-362-111 and 112, and 14-164-210 and 211. This security may include a mortgage lien on the facilities of the authority. See A.C.A. 14-362-117
and 14-164-220. If they are truly "revenue bonds", the bonds will not be the general obligation of any county or municipality, and no indebtedness of any county or municipality will result. See A.C.A. 14-362-115(a) and (b), and 14-164-217(a)(1). Thus, in response to your first question, the responsibility for paying off "revenue bonds" in case the project is halted is dependent upon the security for the bonds.
You have also asked how the share of liability of each of the signatories will be determined if indeed they are found to be liable for repayment of the bonds. As stated previously, the signatories will not be liable at all if the bonds are "revenue bonds". If, however, some general obligation funds are involved, the liability of each signatory in the event of default will, in all likelihood, be governed by the supplemental agreement. We cannot speculate at this point as to what the liability of each party would be, or even what laws of this state would be relevant, while the terms of the financing of the project are still undetermined.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
[1] We use the term "drafted" because the copy we have been provided is unsigned and we do not have knowledge that it has been executed.